IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DANNY B JOHNSON,

      Petitioner,

v.                                            CASE NO. 4:08-cv-00221-MP-MD

WALTER MCNEIL,

      Respondent.

_____/

# **O R D E R**

This matter is before the Court on Doc. 37, Report and Recommendation regarding Mr. Johnson's Petition for Writ of Habeas Corpus, Doc. 1. The Magistrate has recommended that the petition be denied, and the case dismissed. Petitioner has not filed any objections to the Report and Recommendation, and the time for doing so has passed. However, further analysis is required to dispose of this matter above and beyond what the Magistrate included in his report.

The analysis the Magistrate did perform is correct. For instance, there is no right to counsel on collateral attack of a conviction. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). So Petitioner's claim that he was wrongfully deprived of the effective assistance of counsel at a state habeas corpus evidentiary hearing (Ground Seven) is without merit.

For Petitioner's other six claims for relief (Grounds One through Six), the Magistrate is also correct that those claims are procedurally defaulted because Petitioner failed to pursue them on appeal during state collateral attack, as he was required to do to maintain them. He is also correct that since there was no "external impediment" that "prevented petitioner from raising the claim[,]" Petitioner fails the "cause" prong of the "cause and prejudice" test. *See McClesky v.*

*Zant*, 499 U.S. 467, 497 (1991).

There is another way for Petitioner's procedural default to be forgiven, however: the showing of a fundamental miscarriage of justice that "probably resulted in the conviction of one who is actually innocent[,]" also known as the *Schlup* gateway. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Though the Magistrate recited the existence of the gateway and the high standard it requires, it is not clear from the Report and Recommendation that the analysis itself was ever performed. This Court does so now.

The Petitioner raised several claims that, if true, might constitute "new reliable evidence... that was not presented at trial." *See Schlup*, 513 U.S. at 327. All in the guise of ineffective assistance claims, Petitioner raised the possibility that evidence of a prior inconsistent statement by the victim/witness was not introduced, that his counsel allowed the prosecutor knowingly to put on perjured testimony, and that counsel failed to locate and call relevant witnesses whose testimony could have changed the outcome of the trial. Petitioner also alleged facts supporting these claims in his petition.

A reading of *Schlup v. Delo* shows that sort of evidence to be precisely the type that may entitle a petitioner to review on the merits despite a procedural default. Schlup was sentenced to death after an attack on a prison guard in the prison where Schlup was incarcerated. He was one of three men tried for the crime, and the evidence was much stronger against the other two. In Schlup's appeals, which led to the decision in *Schlup v. Delo*, he claimed that his counsel had failed to interview and call other witnesses who could have provided relevant exculpatory testimony. Specifically, Schlup claimed that his lawyer failed to find and call to the stand witnesses that saw and spoke with Schlup either during or right after the attack on the prison guard in question, and could testify that he was not sweating, nervous, or covered in blood.

There was also evidence, in the form of a video tape, that showed Schlup to have been in the dining hall at the time of the attack, which took place on a walkway in a cell block. The Supreme Court granted Schlup relief, creating the "manifest injustice" excuse for procedural default.

Here, review of the trial and appellate record reveals a slightly different story than the one proposed by the Petitioner, leading to a different result. It is true that, a month after accusing him, Mr. Johnson's victim swore a notarized statement that said he was innocent and never attacked her or burglarized her house. Doc. 1, Ex. A. She provided the statement to the prosecutor, who timely provided it to the defense. In turn, when counsel for Mr. Johnson got his turn to cross-examine the victim, he asked her if she had ever asked that the charges be dropped. She replied that she had not. He then impeached her, using her prior sworn statement. She replied that Mr. Johnson had been harassing her, and she signed that statement and turned it in based on his promise that he would leave her alone in return. On re-direct, the prosecutor asked her to explain further the request for him to drop the charges, and she explained again that she signed it in an attempt to get Mr. Johnson to stop stalking her.

Analysis of those facts reveals that Mr. Johnson is mistaken in his assertion that the prosecutor put on perjured testimony, and that his counsel failed to introduce evidence of a prior inconsistent statement of the victim and failed to impeach the victim as a witness. The prosecutor did not suborn perjury or fail to correct the record- on the contrary, by the time the prosecutor had a chance to re-directly examine the victim, the jury had already heard that she signed a statement exonerating Mr. Johnson. Indeed, whether Mr. Johnson's counsel at the time chose to introduce the statement into evidence or read the entire statement into the record might have been trial strategy, as the trial judge concluded after thorough analysis on this very point at

the hearing on Mr. Johnson's Motion for a New Trial. It is possible that Mr. Johnson's counsel may have impeached the witness differently, but he did impeach her, and he used her prior inconsistent statement to do it.

Additionally, Mr. Johnson's assertion that his trial counsel assisted him ineffectively by failing to call the notary for the victim's notarized statement falls short of the *Schlup* standard because Mr. Johnson fails to introduce "new reliable evidence," as the law requires. In his petition, Mr. Johnson speculates that the man who notarized the victim's statement exonerating Mr. Johnson would testify that she was not under any visible duress when she signed it. Mr. Johnson has not actually produced any such testimony, however, in the form of an affidavit or otherwise. Therefore, this Court cannot grant any relief based on what Mr. Johnson speculates the notary's testimony might have been.

Even if he had produced an affidavit to that effect, it is not clear at all that his jury would, more likely than not, have found reasonable doubt based on that new evidence where there was none before. The jury heard and considered the testimony of Jacqueline Scott, who testified that she observed the victim and Mr. Johnson talking when he visited her vocational school, and that she was not under obvious duress at the time. Yet, the jury convicted him of aggravated stalking, which required that they believe beyond any reasonable doubt that the victim was in fear of death or serious bodily harm. Even if Mr. Johnson could produce testimony from a notary that the victim was not visibly upset or obviously under duress when she signed the statement in question, this Court could not find that the omission of that testimony at the original trial "probably resulted" in the conviction of someone who is actually innocent. *See Schlup,* 513 U.S. at 327. The jury found that Mr. Johnson frightened the victim enough to convict him of aggravated stalking despite testimony that she was not visibly frightened even in his very

presence. The testimony that she was not visibly frightened while signing a document that mentioned him likely would not have changed that outcome.

Petitioner has, looking back on his trial, several things he might prefer his trial counsel to have done differently. He might now disagree with how his counsel presented certain evidence to the jury. What he does not have is new evidence that the jury did not get to consider, which if they had considered would probably have led them to a different result. As that is what the *Schlup* gateway requires, that means this Court cannot excuse his procedural default based on a miscarriage of justice. Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. The Report and Recommendation of the Magistrate, Doc. 37, is ADOPTED and incorporated herein.

2. The Petition for a Writ of Habeas Corpus, Doc. 1, is DENIED, and this case is DISMISSED WITH PREJUDICE.

**DONE AND ORDERED** this _20th_ day of November, 2009

_s/Maurice M. Paul_

Maurice M. Paul, Senior District Judge